Filed 1/13/22

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>MOISES FLORES,<br><br>        Defendant and Appellant. | A160578, A161643<br><br>(Sonoma County<br>Super. Ct. No. SCR7311481) |

Defendant Moises Flores entered a no contest plea to one felony count of committing a lewd act on a child under age 14 (hereinafter, victim).[1]  The trial court sentenced defendant to the middle term of six years in prison and denied his invitation to recall the sentence.  Before us is defendant's consolidated appeal from the judgment (A160578) and the trial court's denial of his invitation to recall his sentence (A161643).

Defendant initially asked us to reverse the judgment on the grounds that the trial court abused its discretion by choosing a six-year term over probation and refusing to recall the sentence.  In our initial opinion in this matter, we affirmed the judgment after concluding that the trial court did not abuse its discretion in rejecting probation in favor of the six-year midterm.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and II of the discussion.

[1] The victim was 12 years old.

1

We also dismissed defendant's appeal from the recall denial as taken from a nonappealable order.

In a petition for rehearing filed on December 29, 2021, defendant now requests that we grant rehearing, vacate his midterm sentence, and either impose the lower term or remand to the trial court with directions to do so. Defendant argues that an ameliorative change in Penal Code[2] section 1170, the determinate sentencing law, that became effective January 1, 2022, applies retroactively to his case pursuant to *In re Estrada* (1965) 63 Cal.2d 740 because his conviction is not yet final. In an answer to this petition, the People agree the new law, section 1170, subdivision (b)(6), applies retroactively in this case but disagree that defendant is automatically entitled to the lower-term sentence. The People argue we should grant rehearing and modify our opinion to remand the matter to the trial court for resentencing under the new law.

After the People filed their answer, we granted rehearing. Upon rehearing, in the nonpublished portion of this opinion, we restate our conclusion that the court had discretion to reject probation and sentence defendant to prison. We also restate our conclusion that the court's refusal to recall his sentence is not appealable. However, in the published portion of this opinion, we now conclude defendant's six-year midterm sentence must be vacated and the matter remanded to the trial court with directions to resentence him under the newly amended version of section 1170, subdivision (b).

---

[2] Unless otherwise stated, all statutory citations herein are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 2019, a felony complaint was filed charging defendant, age 22, with one count of committing a lewd act (kissing on the mouth) on a child under age 14 in violation of section 288, subdivision (a) and three counts of committing forcible lewd acts (touching the breasts, kissing the neck, and biting the neck) on a child under age 14 in violation of section 288, subdivision (b). These charges stemmed from the following course of events.

On September 7, 2019, the victim's mother reported to police that defendant, the live-in boyfriend of the victim's older sister, repeatedly made sexual advances toward the victim while she was staying at her father's house over the previous month.[3]

On September 11, 2019, the victim was interviewed at the Redwood Children's Center. She described several recent incidents of abuse involving defendant. The first incident occurred recently, about 1:00 a.m., when the victim was sitting on the couch watching television and the rest of the family was asleep. Defendant surprised her from behind and touched her in an abnormal way. Although the victim told defendant " 'stop' " and " 'no,' " he sat on her and kissed her. Defendant bit her neck and gave her a hickey as she tried to push him off. He also touched her " 'chest area' " over her bra with his hand and put his tongue in her mouth. Although the victim continued to say " 'no,' " she could not move defendant because he was still sitting on her. When the incident was over, the victim went to her bedroom and shut the door. Since the door had no lock, the victim placed items in front of it to barricade herself inside. The victim had a purple mark and bite marks on her neck.

---

[3] Defendant lived at the victim's father's house.

Another time, about 12:30 a.m. during Labor Day weekend, defendant petted the victim's head, prompting her to slap his hand away and repeatedly tell him to leave. He finally did.

The victim recalled a third incident when she was sitting on a chair. Defendant tried to sit on her, but she kneed him in the jaw as hard as she could and he left. The victim also recalled defendant complimenting her and taking photos of her on Snapchat. He denied it, but she saw flashes go off.

On September 11, 2019, the victim and a detective assigned to her case initiated a pretext communication to defendant via Snapchat. During their conversation, defendant denied kissing her, giving her a hickey, or touching her breasts. Defendant claimed he had been "playing" and they "accidentally bumped heads," and stated, " 'Oh, I don't remember tbh [to be honest]. I was super drunk.' " When the victim told defendant what she remembered, he responded, " 'I'm sorry. I don't want you to feel that way. It was all my fault.' " Defendant told the victim he would only kiss her again if she wanted him to, but he would ask first.

Later that day, defendant was arrested. During his police interview, defendant recalled an incident when he sat on the victim and, when he turned his head, his lips accidentally touched hers. Defendant denied giving her a hickey or touching her breasts. He also denied being drunk and could not explain why he told the victim otherwise. Later in the interview, defendant admitted drinking but claimed not to have been impaired. He denied any intention of kissing her again, even if she consented.

On March 5, 2020, defendant pleaded no contest to one count of committing a lewd act on a child under age 14, a serious and violent felony within the meaning of sections 1192.7, subdivision (c) and 667.5, subdivision (c). Defendant's plea was an open plea with a maximum term set

4

at eight years in prison. Defendant also agreed the trial court could consider the three dismissed counts under section 288, subdivision (b) when determining his sentence.

A probation officer interviewed defendant in anticipation of sentencing. Defendant "declined to discuss the details of the offense but accepted responsibility for what the victim reported occurred." Defendant was remorseful, stating, " 'I'm ashamed of myself.' " He denied being sexually attracted to young girls and insisted he would not engage in such conduct again. Using a risk assessment instrument known as Static-99R, probation assessed defendant's risk level for being convicted of another sexual offense within five years if released on probation as "average . . . ." The probation department recommended that the court appoint a psychologist or psychiatrist to evaluate defendant pursuant to sections 288.1 and 1203.067, a prerequisite to placing him on probation.[4]

The trial court granted probation's request for appointment of an expert under section 288.1, and on July 7, 2020, Dr. Kevin T. Kelly, Ph.D., a licensed psychologist, examined defendant. In his report to the court, Dr. Kelly opined defendant was an "excellent candidate for group treatment of sexual offense" and was likely to successfully complete a probationary period and not to reoffend. Dr. Kelly based his opinions on several findings, including the facts that defendant admitted his offense, volunteered an apology, and showed a "favorable amount of insight and self-analysis . . . ."

---

[4] Section 288.1 provides in relevant part: "Any person convicted of committing any lewd or lascivious act . . . [on] a child under the age of 14 years shall not have his or her sentence suspended until the court obtains a report from a reputable psychiatrist, from a reputable psychologist who meets the standards set forth in Section 1027, as to the mental condition of that person." (Accord, § 1203.067, subd. (a)(3).)

5

On July 16, 2020, the probation department offered a supplemental report in light of Dr. Kelly's report, in which it recommended that defendant be placed on supervised probation for four years with conditions that would include serving 12 months in jail and completing programs and services targeting his risk factors as directed by the probation officer and jail personnel.

The sentencing hearing was held on July 21, 2020. The court heard statements from the victim's parents describing their daughter's deep trauma from defendant's actions. The prosecutor then asked the court to sentence defendant to prison, pointing out that Dr. Kelly's report failed to account for "the true severity of the crimes and the impact on the victim . . . ." The prosecutor noted the report failed to acknowledge "the forcible elements of what had occurred, which is in front of the Court for consideration, due to *Harvey*[5] waivers," and defendant's minimization of the severity of his actions. (Italics added.) Defense counsel asked the court to follow Dr. Kelly's recommendations and place defendant on probation and in a treatment program.

In ruling, the court found the factors in mitigation and aggravation were "balanced . . . ." The court then focused on defendant's minimization of the severity of his actions to both Dr. Kelly and the probation officer and his violation of a position of trust in the victim's family, concluding: "You had a place in their home. And you were a trusted member, really sort of collaterally, of their family by extension. And to have their child have to feel like she had to continuously run, to avoid you, into her room and throw you out of her room, is just really unconscionable. I think it would have been a different instance if we were talking about one very isolated event. But this,

---

[5] *People v. Harvey* (1979) 25 Cal.3d 754.

to the Court, looks like it was ongoing. It was ongoing for a substantial period of time. And the level of responsibility that has been taken, I think is—doesn't rise to the level for what actually occurred."

Based on these facts, the court denied probation and sentenced defendant to the midterm of six years. The court also imposed a lifetime registration requirement (§ 290). After imposing various fees and fines, the court reserved the issue of victim restitution and dismissed the remaining counts with a *Harvey* waiver on the prosecutor's motion. Defendant filed a timely notice of appeal on July 22, 2020 (A160578).

On October 6, 2020, defendant filed an invitation to recall his sentence pursuant to section 1170, former subdivision (d), which the prosecution opposed. On December 2, 2020, the court declined defendant's invitation, prompting his second notice of appeal as to that order (A161643).

Case Nos. A161643 and A160578 were consolidated for purposes of this appeal on January 15, 2021.

## DISCUSSION

### I. *Defendant's sentence was not an abuse of discretion.*

Defendant contends the trial court abused its discretion by choosing a six-year term over probation and refusing to recall the sentence. He reasons that the court: (1) arbitrarily disregarded the recommendations of the court-appointed expert and probation department; (2) improperly relied on the victim's age, an element of his crime, as a factor in its sentencing choice; and (3) imposed a "disproportionate" sentence contrary to section 1170. We begin with the governing law.

"Following a defendant's conviction of a crime, the sentencing court may choose among a variety of dispositional options. One option is to release the offender on probation. 'Probation is generally reserved for convicted

7

criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation.' [Citation.] A grant of probation is 'qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" (see § 15) nor a criminal "judgment" (see § 1445). Instead, courts deem probation an act of clemency in lieu of punishment [citation], and its primary purpose is rehabilitative in nature [citation].' [Citation.] Accordingly, we have explained that a grant of probation is an act of grace or clemency, and an offender has no right or privilege to be granted such release. [Citation.] Stated differently, "[p]robation is not a right, but a privilege.' [Citation.]" (*People v. Moran* (2016) 1 Cal.5th 398, 402 (*Moran*); see Cal. Rules of Court, rule 4.414[6] [criteria affecting decision to grant or deny probation include facts relating to the crime and to the defendant].)

A trial court has broad discretion to choose among its dispositional options, and its choice will not be disturbed on appeal absent a manifest abuse of that discretion. (*Moran, supra*, 1 Cal.5th at p. 402; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) Stated otherwise, in reviewing the matter on appeal, a trial court is presumed to have acted to achieve legitimate sentencing objectives in the absence of a clear showing the sentencing decision was irrational or arbitrary. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.)

A. *The court did not arbitrarily reject Dr. Kelly and the probation department's recommendation.*

Defendant contends the court abused its discretion by failing to adopt the recommendation of Dr. Kelly and the probation officer to place him on probation with conditions that include sexual offender group treatment.

---

[6] All citations to rules herein are to the California Rules of Court.

Based on the record, we conclude the court had reasonable grounds to choose a six-year prison term over probation.

Defendant correctly notes that Dr. Kelly opined that he presented "a very low risk of recidivism" and had "a good prognosis for rehabilitation . . . ." The probation department endorsed Dr. Kelly's opinions. However, the trial court found defendant minimized the nature of his conduct to both Dr. Kelly and the probation department. The court also noted defendant had no acknowledgment of the severity of his abuse, which was "ongoing for a substantial period of time." The record supports these findings.

For example, according to Dr. Kelly's report, defendant "declined to discuss [the] details" of the charges while acknowledging, " 'I made a mistake. I touched her, my girlfriend's sister. I pled no contest.' " Yet when Dr. Kelly asked defendant whether he touched the victim more than once, defendant responded, " 'No, once.' " Dr. Kelly appears to have accepted defendant's response at face value even though it is belied by the record, which reveals multiple acts of sexual abuse, several of which involved use of force. Most notably, the victim described defendant touching her breast and kissing her and, when she repeatedly told him " 'no,' " he pinned her down by sitting on her and holding her wrists. The victim "could not move Flores off her because he weighed too much." Another time, the victim was forced to "knee[] him in the jaw as hard as she could" to escape his sexual advances. These forcible acts, omitted from Dr. Kelly's report, were before the court during sentencing notwithstanding defendant's no contest plea. (See *People v. Barasa* (2002) 103 Cal.App.4th 287, 291, fn. 3 [*Harvey* waiver permits sentencing judge to consider facts underlying dismissed charges].)

On this undisputed record, no basis exists for disturbing the court's decision to reject Dr. Kelly and the probation officer's recommendation of

probation and to sentence defendant to the midterm of six years. (See *People v. Superior Court (Du), supra*, 5 Cal.App.4th at p. 831.)

B. *The court did not improperly rely on the victim's age during sentencing.*

Defendant argues the trial court improperly relied on the victim's age (12), an element of his crime (see § 288, subd. (a)), when choosing a prison sentence over probation. (See *People v. Wilson* (1982) 135 Cal.App.3d 343, 358 [it is "impermissible dual use of facts for a court to impose an upper term by using the same fact used to enhance the sentence"], disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.) The factual record reflects otherwise.

At the sentencing hearing, the court found, "In aggravation, . . . Mr. Flores did hold a position of trust within the household. He was a family member for all purposes and he was trusted to be there. [¶] Additionally, the victim in this case is a child and has been greatly impacted and especially since it occurred in her own home. And that's supposed to be our safe place always, is our home. And to have that sense of security destroyed is not something I'm sure that will easily be something that she can get over."

As this excerpt reflects, the court, notwithstanding its brief reference to the victim's youth, relied on two valid aggravating factors: the defendant's exploitation of a position of trust (see rules 4.414(a)(9), 4.421(b)(1)) and the victim's particular vulnerability in her own home late at night while her family slept (see rules 4.414(a)(3), 4.421(a)(3)).[7] Defendant does not dispute the evidence supporting these findings. As such, there are no grounds for disturbing them. (See *People v. Clark* (1990) 50 Cal.3d 583, 638 [the evidence

---

[7] In the presentencing report, the probation officer found as an additional aggravating factor defendant's holding the victim's wrists to prevent her escape (rule 4.421(a)(11)).

supported a finding of particular vulnerability where defendant "used his . . . relationship with [the victim] and knowledge gained thereby to persuade her to admit him to her apartment"]; *People v. Williams* (1991) 228 Cal.App.3d 146, 153 [even a single appropriate factor is sufficient to support an aggravated term].)  As noted *ante*, " '[p]robation is not a right, but a privilege.' [Citation.]" (*Moran, supra*, 1 Cal.5th at p. 402.)

     C.    *The court imposed a proportionate sentence.*

Defendant also challenges his sentence as disproportionate within the meaning of section 1170, subdivision (a)(1).  This provision states:  "The Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice.  When a sentence includes incarceration, this purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances."  (§ 1170, subd. (a)(1).)

For the same reasons we rejected his previous arguments, we reject this one.  Put simply, defendant's premise—to wit, that there are no aggravating factors in this case—is mistaken.  The record demonstrates that not only did defendant minimize his actions to several individuals charged with reviewing his case but also that his actions were repeated, ongoing, and enabled by his position of trust in the victim's home.  These factors, without more, support the court's decision to sentence defendant to a prison term instead of placing him on probation.  (See § 1170, subd. (a)(3) ["In any case in which the sentence prescribed by statute for a person convicted of a public offense is a term of imprisonment in the state prison . . . , the court shall sentence the defendant to one of the terms of imprisonment specified unless

11

the convicted person is given any other disposition provided by law, including a fine, jail, probation"].)

## II. *Defendant lacks standing to challenge the court's December 2, 2020 order.*

Next, defendant challenges the court's denial of his "invitation" under section 1170, former subdivision (d)[8] to recall his sentence. We agree with the People that defendant lacks standing to bring this challenge.

Under section 1237,[9] a defendant may appeal (1) a "final judgment of conviction" or (2) an order made after judgment which affects the substantial

---

[8] As mentioned, section 1170 was amended effective January 1, 2022. (Stats. 2021, ch. 731, § 1.3.) Among other changes, the Legislature deleted section 1170, former subdivision (d)(1), the provision defendant relied upon to request recall of his sentence. (Stats. 2021, ch. 731, § 1.3.) Prior to its deletion, section 1170, former subdivision (d)(1) provided in relevant part: "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison . . . and has been committed to the custody of the secretary . . . , the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of state prison inmates . . . , recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."

[9] Section 1237 provides: "An appeal may be taken by the defendant from both of the following:

"(a) Except as provided in Sections 1237.1, 1237.2, and 1237.5, from a final judgment of conviction. A sentence, an order granting probation, or the commitment of a defendant for insanity, the indeterminate commitment of a defendant as a mentally disordered sex offender, or the commitment of a defendant for controlled substance addiction shall be deemed to be a final judgment within the meaning of this section. Upon appeal from a final judgment the court may review any order denying a motion for a new trial.

"(b) From any order made after judgment, affecting the substantial rights of the party."

rights of the party.  The December 2, 2020 order declining defendant's recall invitation is neither.

First, the "final judgment" in this case, by which defendant was sentenced to six years, was entered on July 21, 2020, and is the subject of case No. A160578.  Further, the trial court's rejection of his invitation to recall this sentence is not "[an] order made after judgment which affects the substantial rights of the party" within the meaning of section 1237.  (*People v. Pritchett* (1993) 20 Cal.App.4th 190, 193–194.)  As *Pritchett* explains: "Section 1170, [former] subdivision (d) does not confer standing on a defendant to initiate a motion to recall a sentence.  Instead, that section permits a court to recall a sentence 'on its *own* motion.'  (§ 1170, [former] subd. (d), italics added; [citations].)  Consequently, the courts have uniformly held that an order *denying* a defendant's request to resentence pursuant to section 1170, [former] subdivision (d) is not appealable as an order affecting the substantial rights of the party.  This is because the defendant has no right to request such an order in the first instance; consequently, his 'substantial rights' cannot be affected by an order denying that which he had no right to request.  [Citations.]" (*Pritchett, supra*, at pp. 193–194.) Accordingly, defendant's appeal of the December 2, 2020 order, case No. A161643, must be dismissed.

### III. *A change in law requires that we vacate defendant's sentence and remand to the trial court for resentencing.*

Effective January 1, 2022, our determinate sentencing law, section 1170, was amended in several fundamental ways.  (See Sen. Bill No. 567 (2020–2021 Reg. Sess.); Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2020–2021 Reg. Sess.); Stats. 2021, ch. 695, § 5.)  Relevant here, Senate Bill No. 567 amended section 1170, former subdivision (b) by making the middle term the presumptive sentence for a term of imprisonment unless certain

13

circumstances exist.[10] (Stats. 2021, ch. 731, § 1.3, adding Pen. Code, § 1170, subd. (b)(1) & (2).) This bill also created a presumption in favor of a low prison term when a defendant is under 26 years of age at the time of the offense. (Stats. 2021, ch. 695, § 4, adding Pen. Code, § 1016.7; Stats. 2021, ch. 695, § 5.1, adding Pen. Code, § 1170, subd. (b)(6)(B).)

Relevant here, section 1170, subdivision (b)(6) provides: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6); see § 1016.7, subd. (b) ["A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed"].)

The People correctly concede the amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal

---

[10] Under this change in law, a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (§ 1170, subd. (b)(2), added by Stats. 2021, ch. 731, § 1.3.)

14

convictions on appeal.[11] (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.) Under established law, we "assume, absent evidence to the contrary, that the Legislature intended an 'amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' " (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341.) "For the purpose of determining the retroactive application of an amendment to a criminal statute, the finality of a judgment is extended until the time has passed for petitioning for a writ of certiorari in the United States Supreme Court." (*Id.* at pp. 341–342, citing *People v. Vieira* (2005) 35 Cal.4th 264, 305–306.)

Undisputedly, defendant was under age 26 when he committed this crime. Accordingly, we agree with the parties that under section 1170, subdivision (b), defendant's six-year midterm sentence must be vacated. However, the parties disagree on the next step, to wit, whether this court should apply the new law in the first instance and, as defendant argues, simply impose the lower term, or remand to the trial court to decide under the newly amended law whether defendant is entitled to the lower term. We conclude the latter approach is appropriate. As the People note, section 1170, subdivision (b)(6)(B) does not require imposition of the lower term in every case in which the defendant was under age 26 at the time the crime was committed. Rather, this provision establishes a presumption of the lower term if the defendant's youth was "a contributing factor" in his or her commission of the crime "*unless* the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice . . . ." (§ 1170, subd. (b)(6)(B), italics added.) Accordingly, we remand to the trial court to apply

---

[11] We need not address the People's argument that defendant erroneously refers to Assembly Bill No. 124 rather than Senate Bill No. 567.

15

this provision in the first instance in order to determine defendant's new sentence.

## DISPOSITION

The judgment is reversed in case No. A160578, and the matter is remanded to the trial court for resentencing under the amendatory version of section 1170, subdivision (b).  Case No. A161643 is dismissed.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Needham, J.

A160578 & A161643/*People v. Moises Flores*

16

<u>A160578 & A161643/People v. Moises Flores</u>

Trial Court:          Superior Court of Sonoma County

Trial Judge:          Shelly Averill

Counsel:          Alan Charles Dell'Ario, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Catherine A. Rivlin and Bruce M. Slavin, Deputy Attorneys General, for Plaintiff and Respondent.